UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOHN THOMAS CARROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18 CV 210 RWS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying his application for supplemental security income pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I will affirm the decision of the Commissioner.

## Procedural History

Plaintiff alleges he became disabled as of March 15, 2015, because of bipolar depression, anxiety, obsessive compulsive disorder, and attention deficit disorder.

Plaintiff's application was initially denied on November 23, 2015. After a hearing before an ALJ on October 4, 2017, the ALJ issued a decision denying benefits on January 10, 2018. On June 26, 2018, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in his Statement of Material Facts (ECF #11-1) to the extent admitted by the Commissioner (ECF #16-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #16-2), as they are admitted by plaintiff . (ECF # 17-1). The uncontroverted statements adopted by the Court provide a fair and accurate description of the relevant record. Additional specific facts will be discussed as needed to address the parties' arguments.

**Discussion**

A.  <u>Legal Standard</u>

To be eligible for supplemental security income benefits under the Social

Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled. The Commissioner then

determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those

positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-

adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.  ALJ's Decision

In her written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date of July 25, 2015. The ALJ found plaintiff to have severe impairments of affective disorder, anxiety disorder, obsessive compulsive disorder, and attention deficit hyperactive disorder, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13-16). The ALJ also determined that plaintiff had nonsevere impairments of obesity and schizoid personality disorder. (Tr. 14). The ALJ found plaintiff to have the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: plaintiff is limited to simple, routine, and repetitive tasks with simple work-related decisions, occasional interaction with coworkers and supervisors, and no contact with the public. (Tr. 16). Relying on testimony from a vocational expert, the ALJ found plaintiff capable of performing work as a cleaner, dishwasher, and hand packer. (Tr. 21). The ALJ therefore found plaintiff not to be disabled from his onset date through the date of the decision. (Tr. 22).

C.  RFC Determination

Plaintiff argues that the ALJ's RFC determination is not based upon substantial evidence because she did not afford proper weight to the opinion of consultative examiner Laura Walker, Ph.D., and instead relied upon her own opinion of the medical evidence. Dr. Walker examined plaintiff on November 11, 2015, in connection with his application for benefits. Dr. Walker noted that she had been sent plaintiff's treatment records from SSM DePaul Behavioral Medicine and Community Counseling Center, where plaintiff participated in outpatient group therapy sessions. Plaintiff told Dr. Walker that he was diagnosed with attention deficit disorder when he was a child and prescribed Ritalin and other medications, which helped some. Plaintiff told Dr. Walker that he participated in group therapy sessions three times per week but did not talk much during those sessions. He also reported seeing a counselor regularly. His psychiatrist prescribed him psychotropic medications, Latuda, Luvox, Lamictal, and Vyanase, which helped with anxiety and depression. (Tr. 322).

Plaintiff reported a fear of being around people and has anxiety attacks when leaving home. He also reported feeling that "everything was fake." He graduated from high school but could not attend the ceremony due to anxiety. Plaintiff stated that he did not get his driver's license until age 22 and had to take the test several times before he passed. Plaintiff reported being scared of water, calling it "needles." He stated that his medications have not helped his obsessive

7

compulsive disorder. Plaintiff denied being obsessive about cleanliness and admitted his parents ask him to clean his room. Dr. Walker noted that she suspected plaintiff had hoarding tendencies. Plaintiff reported having several jobs which he quit shortly after obtaining employment due to anxieties. (Tr. 322-23).

Dr. Walker observed that plaintiff was unkempt but with no smell, and that he approached the office slowly and with signs of anxiety. He rarely made eye contact and his affect was restricted, with depressed mood. Plaintiff's speech was hesitant but understandable and his thoughts were slow but coherent. Plaintiff was oriented in all areas but confused about the day of the week. Dr. Walker determined his intelligence to be low average to average and that his problems are with anxieties which interfere with daily functioning. Dr. Walker diagnosed him with agoraphobia with panic disorder-extreme, dysthymic disorder, schizoid personality disorder, and obsessive compulsive disorder. She opined that plaintiff's ability to understand, remember and carry out instructions is markedly impaired in a public setting as evidenced by his job history and trouble getting a driver's license. Dr. Walker stated that plaintiff's ability to respond appropriately to supervisors, co-workers, and the public is markedly impaired as evidenced by his isolation, lack of friends, and his reoccurring panic disorder. She concluded that plaintiff would need more intensive treatment as he aged and his symptoms became more entrenched. (Tr. 324-25).

The ALJ thoroughly summarized Dr. Walker's opinion and gave it little weight when formulating plaintiff's RFC. In discounting Dr. Walker's opinion, the ALJ noted that Dr. Walker was a consultative examiner, not a treating physician, who only examined plaintiff one time. The ALJ also believed that Dr. Walker had not reviewed plaintiff's medical records before formulating her opinion. The ALJ noted that Dr. Walker diagnosed plaintiff with schizoid personality disorder when none of his treating physicians, including his treating psychiatrist, had made such a diagnosis. Finally, the ALJ discounted Dr. Walker's as inconsistent with the medical evidence as a whole.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (internal citation omitted). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). When evaluating opinion evidence, an ALJ is required to explain in her decision the weight given to any

opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(e)(2)(ii). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the record should be "evaluated as a whole." *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff argues that the ALJ's reasons for discounting Dr. Walker's opinion are not supported by substantial evidence on the record as a whole because Dr. Walker considered plaintiff's treatment records and her diagnosis of schizoid personality disorder was consistent with plaintiff's symptoms. Essentially, plaintiff invites me to reweigh the medical evidence considered by the ALJ in her determination of plaintiff's RFC. That is not my role. *Hensley*, 829 F.3d at 934. As discussed below, the ALJ properly factored into her RFC determination an assessment of plaintiff's credibility[1] and the medical evidence of record. In so doing, she did not substantially err. It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). Here, the ALJ did not substantially err when she assigned little weight to Dr. Walker's opinion.

---

[1] The SSA regulations now refer to this as a consistency determination rather than a credibility determination, but the same standards apply.

The ALJ was not required to give Dr. Walker's controlling weight, as Dr. Walker was not plaintiff's treating physician. *See* 20 C.F.R. § 416.927. There is substantial evidence on the record as a whole to support the ALJ's conclusion that Dr. Walker's opinion should be afforded little weight as inconsistent with the medical evidence as a whole, including plaintiff's treatment records.[2] In July and August of 2015, plaintiff attended outpatient group therapy sessions three times a week at SSM Depaul. During these sessions, his eye contact varied from fair to good, with occasional flat affect. His behavior ranged from interactive to quiet, but he was alert, attentive and oriented, and his thoughts were always organized. At times he spontaneously participated in the sessions, and other times he responded to prompts. (Tr. 7-61). Examination by Richard Gestring, M.D., on July 31, 2015, revealed that plaintiff was alert and oriented, with good eye contact and logical thought processes, despite a sad mood and restricted affect. (Tr. 302).

On the same day he was evaluated by Dr. Walker, plaintiff also saw his treating psychiatrist Jay Liss, M.D. for a follow up examination. He reported to Dr. Liss that his medications were "working well" and that his depression had improved and he was feeling calm. Examination was within normal limits except for a restricted affect and fair insight and judgment. Dr. Liss diagnosed ADHD

---

[2] Defendant admits that Dr. Walker was apparently provided plaintiff's medical records despite the ALJ's conclusion otherwise. This factor was but one of several cited by the ALJ in her assessment of Dr. Walker's opinion, and this erroneous statement is not sufficient to require remand here where substantial evidence as a whole supports the ALJ's conclusion that plaintiff is not disabled.

and bipolar disorder (not schizoid personality disorder), recommended a follow up appointment in four months and continued his psychotropic medications. Plaintiff did not return to Dr. Liss for treatment again until June of 2016, when he reported depression, anxiety when leaving the house, and lack of motivation. Examination was again within normal limits, except Dr. Liss observed a flat affect and limited insight and judgment. Plaintiff was also examined one time by Price Gholson, Psy.D., for medical care purposes in August of 2016. Dr. Gholson noted that plaintiff's appearance, facial expressions, and eye contact were below average, but his remote memory, intelligence, and all intellectual functions were average, and he was cooperative and only mildly anxious. Dr. Gholson diagnosed bipolar disorder, attention deficit hyperactive disorder, and panic disorder, and assigned plaintiff a GAF score of 50.[3]

State agency psychologist Ken Callis, Ph.D., completed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment on November 19, 2015. (Tr. 61-62). After a review of plaintiff's treatment records, Dr. Callis concluded that Dr. Walker's opinion with respect to the degree of plaintiff's limitations was inconsistent with the treatment record as a whole. Dr.

---

[3] A Global Assessment of Functioning (GAF) score is based on a clinician's judgment of the individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) (DSM-IV-TR). A GAF score of 41-50 indicates serious impairments in social, occupational, or school functioning, whereas a GAF score of 51-60 indicates moderate difficulties in these areas. *Id.* The ALJ correctly noted that GAF scores do not correlate to the severity requirements in the regulations or otherwise represent specific objective findings.

Callis noted that plaintiff had no history of problems with authority, attended and graduated high school, and that he was able to prepare simple meals, perform light household tasks, and shop for groceries. For these reasons, Dr. Callis opined that plaintiff retained the ability to perform simple tasks with limited social interactions. (Tr. 62). The ALJ gave "great weight" to this opinion as consistent with the medical records at the time it was given but concluded that plaintiff's subsequent treatment records supported greater limitations in social interaction and concentration. (Tr. 20).

The ALJ relied upon these examination results in discounting Dr. Walker's opinion and reaching her RFC determination, and in doing so she did not substantially err. The treatment records as a whole do not support the degree of limitations found by Dr. Walker. Moreover, the ALJ did not simply adopt Dr. Callis' opinion wholesale or discount Dr. Walker's opinion in its entirety. Instead, she imposed significant nonexertional limitations to account for plaintiff's credible limitations, including limiting plaintiff to simple, routine, and repetitive tasks with simple work-related decisions, occasional interaction with coworkers and supervisors, and no contact with the public. (Tr. 16). The ALJ therefore incorporated Dr. Walker's opinion with respect to eliminating his interaction with the public. Although the ALJ found Dr. Callis' opinion with respect to plaintiff's ability to perform simple tasks supported by the medical record as a whole, she did

13

not adopt his opinion wholesale, either. Instead, she determined that the totality of the medical evidence, including subsequent treatment records, supported a greater degree of limitation with respect to concentration, so she further accounted for these limitations by limiting plaintiff to performing routine and repetitive tasks with only simple work-related decisions. The ALJ also determined that plaintiff was also more limited socially than Dr. Callis determined, so she restricted plaintiff to only occasional contact with supervisors and co-workers. This degree of limitation is consistent with plaintiff's own statement that he gets along "good" with his authority figures, as well as the other evidence of record. (Tr. 197). The ALJ's decision to credit Dr. Callis' opinion over Dr. Walker's opinion in some respects is supported by substantial evidence on the record as a whole, and the ALJ fulfilled her duty to weigh the conflicting evidence and resolve disagreements among medical opinions. *Cline*, 771 F.3d at 1103.

Plaintiff argues that the ALJ failed to adequately develop the record because she did not request another consultative examination after deciding to discount Dr. Walker's opinion. While the ALJ "has a duty to fully and fairly develop the evidentiary record," *Byers v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012), "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Where

14

other evidence in the record provides a sufficient basis for an ALJ's decision, then an ALJ "is permitted to issue a decision without obtaining additional medical evidence." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (internal quotation marks and citation omitted). Importantly, an ALJ's duty to develop the record is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Where, as here, the RFC is supported by substantial evidence on the record as a whole, the ALJ was not required to obtain a consultative examination or a doctor's opinion to determine plaintiff's work-related limitations. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (ALJ not required to seek additional information from treating physicians or order consultative examination where medical record is adequately developed); *Martise*, 641 F.3d at 926-27 (ALJ required to supplement record only if the existing medical record does not provide sufficient evidence to determine whether the claimant is disabled).

Here, the ALJ evaluated all of the medical evidence of record and adequately explained her reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the weight accorded by the ALJ to the medical opinion evidence in this case, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

Although not challenged by the plaintiff, the Court also notes that the ALJ properly considered plaintiff's daily activities and assessed plaintiff's RFC consistent with his credible limitations. The ALJ's evaluation of the consistency between plaintiff's subjective reports and the record as a whole was based upon his own testimony, the objective medical evidence of record, and his daily activities. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor in her decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman*, 596 F.3d at 968. "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the

plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the record demonstrated that plaintiff drove, attended group therapy sessions three times a week, and attended other medical appointments without suffering anxiety attacks. Plaintiff also occasionally went shopping, and in January of 2016, he told Joann Uding, F.N.P.C., that he was interested in the "Take it Work Program." (Tr. 363). In May of 2016, he told Ms. Uding that his last panic attack was four months prior and that he had applied for a job. He also reported that he was being weaned off his ADHD medication (Vyvanse) and that he wanted to go to "Transformation 2016" to address his obesity. (Tr. 367). Here, the ALJ was not required to fully credit all of plaintiff's assertions regarding his limitations given his daily activities. *Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (holding that inconsistency between plaintiff's subjective complaints and evidence

17

regarding activities of daily living raised legitimate concerns about credibility); *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005). The ALJ also properly considered plaintiff's infrequency of treatment with his treating psychiatrist with no recommendation for more frequent or intensive treatment, and a relatively stable medication regimen in her analysis. *See Kamaan v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013). Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing his daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). The ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record. In so doing, she did not substantially err, as subjective complaints may be discounted if inconsistencies exist in the evidence as a whole. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).

Here, the ALJ formulated plaintiff's RFC only after evaluating his credibility and discussing the relevant evidence, including his testimony, the medical evidence, and his daily activities. After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform full range of work, with significant nonexertional modifications tailored to his credible limitations. In so doing, she did not substantially err. The ALJ's RFC assessment

takes into account plaintiff's credible limitations of record and is supported by substantial evidence on the record as a whole.

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is

affirmed, and plaintiff's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

*/s/ Rodney W. Sippel*
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of May, 2019.